IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ISENSE MEDICAL CORP., | § | |
| | § | No. 33, 2026 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below–Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. N24C-02-240 |
| BIOMÉRIEUX, INC. and SPECIFIC | § | |
| DIAGNOSTICS, LLC, | § | |
| | § | |
| Defendants Below, | § | |
| Appellees. | § | |

Submitted: January 20, 2026
Decided: March 3, 2026

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

## ORDER

After consideration of the notice and supplemental notice of appeal from an interlocutory order and the exhibits attached thereto, it appears to the Court that:

(1)    In 2008, iSense, LLC ("iSense") contracted with the University of Illinois (the "University") for an exclusive license to patents (the "Platform License") for a sensor technology enabling the detection of volatile compounds (the "iSense Platform License Agreement"). Dr. Paul Rhodes, a co-founder of iSense, created iSense Medical Corp. ("IMC") to develop cancer-detection-related applications for the Platform License patents. In 2010, iSense granted IMC a sublicense to use the patents for that purpose (the "iSense-IMC Sublicense

Agreement"). Dr. Rhodes also created defendant Specific Diagnostics, LLC ("Specific") to develop microbiology-related applications for the Platform License patents (the "Specific Field of Use"). In 2011, iSense granted Specific a sublicense to use the patents for that purpose.

(2) In 2021, the University terminated the iSense Platform License Agreement, rendering iSense unable to sublicense to either IMC or Specific. The University made it clear, however, that it welcomed a direct license with Specific in the Specific Field of Use. In February 2022, one of Dr. Rhodes' investors, bioMérieux ("BMX" and, together with Specific, "Defendants"), sought to acquire Specific. To curry favor with Dr. Rhodes, BMX agreed that Specific (once acquired by BMX) would secure the *entire* Platform License and grant iSense a sublicense (the "New iSense Sublicense") for all fields of use outside of the Specific Field of Use (the "Pre-Merger Agreement"). The Pre-Merger Agreement thus would enable iSense to honor its commitment to IMC under the iSense-IMC Sublicense Agreement. On April 11, 2022, BMX, iSense, and Specific executed a merger agreement memorializing the acquisition. But Defendants did not issue the New iSense Sublicense.

(3) IMC then sued Defendants in the Superior Court alleging tortious interference with contract (Count 1) and tortious interference with prospective contractual relations (Count 2). IMC's theory of recovery is that Defendants' breach

2

of the Pre-Merger Agreement prevented iSense from securing the New iSense Sublicense, causing iSense to breach the iSense-IMC Sublicense Agreement. Defendants moved to dismiss the complaint, arguing that IMC had failed to state a claim for which relief could be granted.

(4) On December 18, 2025, the Superior Court granted Defendants' motion as to Count 1 and denied it as to Count 2 (the "Ruling"). The court found that Defendants' breach of the Pre-Merger Agreement could not sustain a claim for tortious interference with contract because IMC did not allege that Defendants "had any duty or obligation to downstream beneficiaries beyond any that Defendants and iSense contracted for in the Pre-Merger Agreement." The court denied Defendants' motion to dismiss the tortious-interference-with-prospective-contractual-relations claim, finding that they failed to brief it.

(5) IMC asked the court to certify an interlocutory appeal of the Ruling under Supreme Court Rule 42. IMC maintained that the Ruling decided a substantial issue of material importance—a threshold inquiry under Rule 42—because it determined that the "independent-duty rule" applies to claims of tortious interference with contract even when the parties are not in privity of contract. IMC also argued that two Rule 42(b)(iii) factors weighed in favor of certifying an interlocutory appeal: factor A (the Ruling decided a question of law for the first time) and factor

3

H (interlocutory review would serve the considerations of justice). Defendants opposed the application.

(6) On January 16, 2026, the Superior Court denied IMC's application. *First*, the Superior Court disagreed with IMC's claim that the Ruling decided a substantial issue of material importance warranting interlocutory review because the court's analysis did not turn exclusively on the application of the independent-duty rule. *Second*, the court held that neither Rule 42(b)(iii) factor that IMC cited weighed in favor of certification. *Third*—and critically—the Superior Court concluded that interlocutory appeal would not promote judicial efficiency. In doing so, the Superior Court noted that two motions remain pending: Defendants' motion for reargument, which, if granted, would allow IMC to file a direct appeal from the court's ruling; and IMC's motion to amend its complaint to add a breach-of-contract claim, which, if granted, would moot an interlocutory appeal. We agree with the Superior Court's conclusion.

(7) Applications for interlocutory review are addressed to the sound discretion of the Court.[1] Giving due weight to the Superior Court's analysis and in the exercise of our discretion, this Court has concluded that the application for interlocutory review does not meet the strict standards for certification under Supreme Court Rule 42(b). Exceptional circumstances that would merit

---

[1] Del. Supr. Ct. R. 42(d)(v).

4

interlocutory review of the Ruling do not exist in this case,[2] and the potential benefits of interlocutory review do not outweigh the inefficiency, disruption, and probable costs caused by an interlocutory appeal.[3]  Here, the most efficient course is for the Superior Court to resolve the parties' pending motions.

NOW, THEREFORE, IT IS ORDERED that the interlocutory appeal is REFUSED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

---

[2] Del. Supr. Ct. R. 42(b)(ii).
[3] Del. Supr. Ct. R. 42(b)(iii).